IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GODFREY EVANS,

    Plaintiff,                    No. CIV S-04-2705 RRB KJM P

    vs.

M. JIMENEZ, et al.,

    Defendants.                FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983. Defendants Jimenez, Harnden, Gamberg and Zills are either employees or former employees of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff alleges defendants knowingly subjected plaintiff to violence at the hands of other prisoners, which caused plaintiff physical injury. Defendants' motion for summary judgment is before the court.

I. <u>Summary Judgment Standards</u>

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

/////

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See <u>Anderson</u>, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See <u>Matsushita</u>, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

On September 23, 2005 the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See <u>Rand v. Rowland</u>, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), <u>cert. denied</u>, 527 U.S. 1035 (1999); <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988).

/////

II. Analysis

The allegations in plaintiff's complaint are as follows, set forth here in a verbatim transcription:

> On June 17, 2003 a racially motivated assault and battery took place at the maximum security High Desert State Prison "C" exercise yard. A group of white inmates attacked a group of African American inmates with inmate manufactured weapons. Prison officials had actual knowledge of the impending danger and excessive risk to African American inmates safety and security, but failed to respond reasonably to the imminent threat of danger. Officials stood by watching doing nothing, and failed to exercise security procedures.
>
> Correctional officer P. Zills, on June 17, 2003 during morning exercise yard release received information, and evidence in the form of an inmate manufactured weapon from a white inmate. The white inmate according to the correctional incident report, handed the defendant P. Zills the weapon and alerted him to the imminent danger, and risk of racial violence. P. Zills failed to exercise the institutions security procedures. As a result of the defendant's nonresponsiveness the plaintiff suffered some nerve damage from severe laceration to the face, and disfigurement. A stab wound to the back, pain and suffering, and mental and emotional distress.
>
> Correctional sergents Jimenez, Harnden and Gamberg, on the morning of June 17, 2003 were alerted to the fact that a white inmate had handed a weapon to correctional officer P. Zills, and that the inmate warned the officer of the impending danger. With this information, and evidence given to them by correctional officer Zills, the correctional sergents named above did nothing but stand next to a wall on the exercise yard watching and waiting for the vicious racial attack to take place. Correctional sergents Jimenez, Harnden, and Gamberg, failed to exercise proper supervisory authority or direction in order to remedy the substantial risk of serious harm to the plaintiff. As a direct result of the deliberate indifference the defendants showed, the plaintiff suffered serious injuries in the form of: some nerve damage from a severe laceration to the face and disfigurement. A stab wound to the back, pain and suffering, and mental and emotional distress.

Compl., Attach. at 1-2.

/////

/////

/////

On May 5, 2005, the court found that, based upon these allegations, plaintiff states claims upon which relief can be granted against defendants Jimenez, Harnden, Gamberg and Zills under the Eighth Amendment. Therefore the court ordered service of process on these defendants pursuant to 28 U.S.C. § 1915A.

The following facts are not disputed for purposes of defendants' motion. <u>See</u> Defendants' "Statement of Undisputed Material Facts" (DSUF), Fact Nos. 1-5, 8-13, 27-28, 30-31, 36-41, 43-45 & Plaintiff's Response. At all times relevant, plaintiff was housed at High Desert State Prison. At High Desert, the CDCR houses some of the most dangerous inmates in California.

On July 17, 2003, around 9:30 a.m., defendant Zills was informed by inmate Pitcocks, who was entering housing unit C-6 from the exercise yard where other inmates were exercising, that white inmates were planning to attack black inmates with weapons. Pitcocks surrendered a metal shank to Zills. In response to this, Zills immediately radioed defendant Jimenez, the supervising sergeant, and Jimenez and Correctional Officer Freeman immediately reported to Zills's location.

Based upon the information provided by Pitcocks, and the fact that 15 to 20 white inmates gathered together on the exercise yard were fully clothed while most of the other inmates were wearing shorts,[1] Jimenez decided to confer with defendants Harnden and Gamberg. Jimenez informed Harnden and Gamberg of what he had learned from Pitcocks and discussed with them whether they should order everyone on the exercise yard to the ground and conduct a search for weapons and otherwise investigate whether a riot was imminent.

/////

/////

---

[1] Defendants do not describe the significance of the white inmates being fully clothed, but the court assumes this fact would be of significance to correctional officers as an indication that the white inmates might be hiding weapons, or assuming violence was going to occur and using the clothing as a form of protection, or both.

5

At that time defendants Jimenez, Harnden and Gamberg noticed some unusual activity by the white inmates grouped together. The inmates appeared to be looking at Jimenez, Harnden and Gamberg intently and they appeared nervous.

At some point thereafter, the white inmates charged upon and then began attacking black inmates. Jimenez, Freeman and others ordered all of the inmates on the yard to the ground but the combatants ignored the orders of the officers. Jimenez also announced over his radio that a riot was occurring. Eventually correctional officers stopped the riot by using warning gunshots, pepper spray, tear gas, physical force and by firing projectiles other than bullets. Of the 140 inmates that were on the yard, 77 participated in the riot.

Plaintiff had been on the yard for about ten minutes when the riot started. Plaintiff suffered injuries to his face and back during the riot.

None of the defendants in this case knew of the potential for a riot on July 17, 2003 at High Desert before inmate Pitcocks' discussion with defendant Zills and Pitcocks' surrender of his weapon.

Plaintiff disputes defendants' position with regard to the time of the attack and certain events leading up to it. See Pl.'s Response to DSUF, Nos. 3, 20, 35, 45, 50-51, 54. However, none of the evidence plaintiff provides supports a chronology that differs significantly from that outlined by defendants. Based upon the record before it, the court finds it cannot reasonably be disputed that inmate Pitcocks disclosed the planned attack at approximately 9:30[2] a.m. and the riot occurring in "C" yard on July 17, 2003 commenced at about 9:35 or 9:37 a.m. Pl.'s Exs. D-Q; Def'ts' Exs. B ¶ 30 & D ¶ 8.

/////

---

[2] While plaintiff appears to suggest that Zills could have received information on the attack from Pitcocks earlier than 9:30 a.m., he does not provide any evidence to contradict defendants' evidence supporting the time of the report as 9:30 a.m. Pl.'s Ex. A ¶ 6; Pl.'s Response to DSUF, No. 3; cf. Pl.'s Exs. D (Zills's Incident Report) & F (Jimenez's Incident Report).

Defendants assert they are entitled to summary judgment with respect to plaintiff's Eighth Amendment claims because the facts show defendants were not deliberately indifferent to plaintiff's safety. The Eighth Amendment's prohibition on cruel and unusual punishment imposes on prison officials, among other things, a duty to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1991) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). An inmate's Eighth Amendment rights are violated by a prison official if that official exposes an inmate to a "substantial risk of serious harm," while displaying "deliberate indifference" to that risk. Id. at 834.

Nothing before the court suggests defendants were indifferent to plaintiff's safety. Between the time inmate Pitcocks first told defendant Zills that white inmates were going to attack black inmates and the time the riot actually started, which was approximately five to seven minutes, the defendants discussed what to do and gathered more information. Nothing in the record indicates defendants did these things for any reason other than to determine the best course of action to confirm Pitcocks' report and prevent a riot.

Plaintiff asserts defendants were deliberately indifferent because they did not immediately order everyone on the exercise yard to the ground. There are two problems with this assertion. First, nothing before the court makes clear whether inmate Pitcocks told defendant Zills or Jimenez that the attack was imminent. In his declaration, defendant Jimenez indicates that Pitcocks told him the attack would take place within the next two hours. Def'ts' Ex. B ¶ 15. Plaintiff questions the credibility of Jimenez's declaration, noting that it provides details -- such as Pitcocks' name and the two hour time frame -- not contained in the initial Incident Reports. Plaintiff does not, however, provide evidence showing Pitcocks said the attack would start immediately. Pl.'s Response to DSUF, No. 20. Second, even assuming Zills or Jimenez had the power to put out the call to "take the yard down," nothing in the record supports a conclusion they should have done so without at least some investigation or consultation. Indeed, plaintiff does not rebut defendants' testimony that before acting on a single inmate's report, it is in the

interest of jail security to attempt to confirm the report. See Pl.'s Exs. L (Zills' Response to RFA No. 7) & N (Jimenez Response to RFA No. 9).

The defendants may not have chosen the best course of action to protect the 140 inmates on the exercise yard at around 9:30 a.m. on July 17, 2003, but nothing indicates they were in any way indifferent to the possibility that a riot might occur.

As defendants assert, they also are entitled to summary judgment under the doctrine of qualified immunity because there are no facts suggesting they were deliberately indifferent to the possibility that a riot might occur on July 17, 2003 after having received Pitcocks' report. See Saucier v. Katz, 533 U.S. 194, 201 (2001).

In light of the foregoing, the court will recommend that defendants' motion for summary judgment be granted.

III. Discovery Motions

The court notes that plaintiff has two motions to compel discovery outstanding. In light of the foregoing and because it does not appear that, through discovery, plaintiff might obtain evidence that he could use to defeat defendants' motion, the court need not reach the discovery motions at this time. For example, even if plaintiff successfully compelled documents undermining Jimenez's declaration regarding what he learned from Pitcocks about the timing of the planned attack, it would not change the result recommended here.

In accordance with the above, IT IS HEREBY ORDERED that plaintiff's motions to compel discovery (#35 & #36) are denied.

IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (# 42) be granted;

2. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written

1 objections with the court and serve a copy on all parties.  Such a document should be captioned
2 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
3 shall be served and filed within ten days after service of the objections.  The parties are advised
4 that failure to file objections within the specified time may waive the right to appeal the District
5 Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
6 DATED:  February 26, 2008.

_____
U.S. MAGISTRATE JUDGE

1
evan2705.57(a)